## Picini et al. v. Gillette, etc.

*John R. Gaughan* and *Jos. E. Gallagher*, for plaintiffs.

*William Zacharellis*, for defendant.

HOBAN, P. J., June 16, 1952.—This is an action of assumpsit by plaintiffs, owners of a building, against defendant, a building contractor, for damages for failure to complete a building project in accordance with the terms of a written contract. The failure and subsequent abandonment of the project by the contractor was conceded and the questions at issue concern damages only. Plaintiff claims the return of the money advanced on the contract, together with damages to be measured by the cost of completion so far as possible to obtain the results contemplated by the contract. Defendant claimed in diminution of damages the extra cost he was put to by reason of the unwarranted interference by plaintiffs with the method of performing the contract and allowance for performance of a part contract, which he claimed was severable from that part which he ultimately abandoned, and

offered evidence designed to show the cost of completion of the work on a comparable basis with that contracted for, which evidence ran counter to the cost of completion evidence produced by plaintiffs.

The jury returned a verdict for $300. Plaintiffs now move for a new trial and press these reasons:

1. That the trial judge was in error in permitting the jury to consider the cost of the partially performed work in diminution of damages.

2. That the verdict was inadequate and not consistent with any aspect of the evidence as to damages.

The written contract between the parties clearly specified separate work to be done on the exterior and interior of the building and specified a flat price for the complete job, $1,450. No time was specified for either the beginning or the completion of the job. There was evidence that the contract was entered into in December 1949, while plaintiffs' building was in course of construction and before it was ready for the application of the exterior surfacing material contemplated by the contract. There is further evidence that within a few weeks thereafter plaintiffs demanded that defendant commence the work, although in the middle of winter and against the warning and protest of defendant that the exterior tile could not be successfully applied in that weather because of the nature of the binding materials required, and that plaintiffs agreed to take the chance of success because of their desire for early completion of their entire project. The contract itself carried no time or date for either the beginning or the completion of the contract. Accordingly, if this evidence was believed, it justified the jury in considering the evidence of defendant of an initial failure and subsequent preparation for replacement of the defective work as caused by unwarranted interference by plaintiffs with defendant's prerogative of performing the work in accordance with

his business judgment. Hence there was submitted to the jury the question of determining from the evidence the increased cost to defendant as a lawful deduction from plaintiffs' total damages. While there is no detailed estimate of the cost of the winter work performed which, as predicted by defendant, proved to be a flat failure, the evidence shows that about half of the exterior was attempted to be surfaced. This is shown by the subsequent labor required to remove defective material, preparation for another effort in the spring to complete the contract. Accepting the defendant's own cost estimate, the jury would be warranted in finding that the expense to defendant there involved and the abortive attempt to surface half the exterior with the prescribed material would run from $300 to $400.

Plaintiffs do not question the theory that extra expense to the contractor, caused by the owners' unwarranted interference with the execution of his contract, may be proved in diminution of damages, but do submit that the evidence does not warrant finding any specific amount. However, as noted above, we believe that the calculation was not difficult and was clearly deducible from the evidence.

The contract also provided for surfacing of part of the walls of the restrooms with the same material as to be applied to the exterior of the building and to provide flooring for these rooms of asphalt tile. The evidence shows that this work was completed and has been accepted by plaintiffs and there is evidence from which the reasonable cost of that work can be placed at $650. Plaintiffs, however, contend that since the contract was a flat rate, this item should not be allowed as in diminution of damages, since if defendant here had in turn been a plaintiff he could not have recovered this amount in a suit on a contract, because completion of so much of the contract would not amount to substantial per-

formance of the contract as a whole. With the cases cited to support the theory that a contractor who fails in performance of a contract to build can only recover on a quantum meruit if his performance has been substantial, we are in accord. Plaintiffs' argument here is that defendant's performance of the interior work cannot be considered as a substantial performance under the contract, since it represented in amount considerably less than half of the performance called for by the document and for which a flat price was to be charged. We are of the opinion, however, that where the contract is clearly divisible into types of work which obviously are not related to each other and must be performed under entirely different circumstances and to an entirely different end than another part of the contract, it would be an unconscionable application of the rule to allow plaintiffs to retain the benefit of such performance without compensating defendant for the reasonable value thereof. The cases are clear that where the production demanded is that of an integrated unit, the contractor cannot stop short of substantial performance and demand payment for part performance, but where the operation clearly contemplates nonintegrated units, the acceptance of one unit which produces benefit to the owner ought to carry with it an obligation to pay for the benefit received. We do not believe, therefore, that the instruction in this case permitting the jury to consider as an item of credit against plaintiffs' claim the reasonable value of the completed work to the interior of the building, was in error.

Taking the evidence most likely to support the verdict, therefore, plaintiffs' direct loss would be their advance payments on the contract, $700, plus the cost of completing the exterior job, which at figures deducible from defendant's evidence would be $670 or a total of $1,370. If the jury placed credence on defend-

ant's evidence and allowed him to offset the reasonable value of the work in the interior of the building, $600, and $400, for his increased cost in attempted performance in the winter against his protest to plaintiffs, the verdict figure of $300 becomes understandable. In other words, there is evidence to support the verdict, and in such a situation we do not believe we are warranted in putting the parties to the expense of a new trial, with no assurance that, contemplating the same evidence, a different result would be obtained.

Now, June 16, 1952, the rule to show cause why a new trial should not be had in the above-entitled case is discharged.